

# NUMBER 13-12-00080-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**JOSEPH ROBERT JOHNSON,**                                          **Appellant,**

**v.**

**NICHOL MARIE JOHNSON,**                                          **Appellee.**

## On appeal from the County Court
## of Lavaca County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Chief Justice Valdez**

Appellant, Joseph Robert Johnson, appeals from the trial court's entry of an Amended Final Protective Order entered in favor of appellee, Nichol Marie Johnson. We affirm the judgment as modified herein.

## I. BACKGROUND[1]

Appellant and appellee have been married more than 20 years and have three children, ages 19, 17, and 13. In October 2010, the couple separated. Appellant moved out of the marital home and began living in an apartment he rents as the sole tenant. Appellee is not on the lease.

On August 28, 2011, appellee, accompanied by her daughter, age 13, went to appellant's apartment to pick up the couple's son, age 17, who had spent the weekend with appellant. According to appellee, appellant was upset and yelled and cursed at the children to get out of his apartment. Once the children were outside, the couple had a brief discussion, during which appellee asked appellant why he had to speak to the children that way. Appellant indicated that he wanted them to "get out" so he could speak to appellee in private. Appellant began arguing with appellee about the expenses he had incurred over the weekend in taking the couple's son out to eat. When the dispute was not resolved to appellant's satisfaction, he "got really angry" and "told [appellee she] needed to mind [her] own fucking business and keep [her] mouth shut and he told [her] to get out." She told him, "[N]o, I have to get [our son's] things together." Then, appellant went and got a shotgun, pointed it at appellee's face, and told her, "I said get the fuck out." She said, "[N]o, I have to get [our son's] stuff." At this point, appellant cocked the shotgun, and appellee left the apartment. Thereafter, appellee sought a protective order.

---

[1] The following facts are taken from the testimony of appellant and appellee, which the trial court heard during a bench trial on appellee's petition for a protective order.

During the hearing on the protective order, appellee testified that appellant has a "short temper" and that "there is a potential for [appellant] to continue acting in a violent manner." At the conclusion of the hearing, the trial court told the parties:

> Whether one person has an apartment over here or has a house over here, you're both still married. That doesn't really wash with me that I live in this place and you've got to get out if you stay over here. You need to get the divorce and get it done and let the district court say where each of you live. And then you have a leg to stand on on where I live and where she lives and where she can't be or he can't be, this, that, and the other. Until that happens, you're still married no matter whose house you think you're in.

> Number two, a shotgun cocked is enough for me.

On November 7, 2011, after examining the record and hearing the evidence and argument of counsel, the trial court entered a Final Protective Order, which included in relevant part the following findings:

> The Court finds that family violence has occurred and that family violence is likely to occur in the future. The Court finds that [appellant] has committed family violence. The Court finds that the following protective orders are for the safety and welfare and in the best interest of [appellee] and other members of the family and are necessary for the prevention of family violence.

In addition to the foregoing, the Final Protective Order also provided in relevant part: "The Court finds that [appellant] should be assessed five hundred dollars ($500.00) as attorney's fees for the services of [appellee's counsel]. IT IS ORDERED that [appellee's counsel] is awarded judgment of five hundred dollars ($500.00) for legal services rendered."

Thereafter, on December 7, 2011, appellant filed his motion to modify, correct, or reform judgment, in which he requested that the trial court "delete the assessment of the attorney's fees provision because no evidence in support of attorney's fees was

3

presented in the trial of this matter." On December 14, 2011, the trial court held a hearing on appellant's motion to modify, correct, or reform judgment. After hearing evidence and argument of counsel, the trial court entered its Amended Final Protective Order denying appellant's motion to modify, correct, or reform judgment.

This appeal ensued.

## II. ANALYSIS

By four issues, which we have reordered and renumbered, appellant challenges the legal and factual sufficiency of the evidence to support the trial court's judgment.

### A. Standard of Review

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We must credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The fact-finder is the only judge of witness credibility and the weight to give to testimony. *See id.* at 819; *Ulmer v. Ulmer*, 130 S.W.3d 294, 300 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *In re Cummings*, 13 S.W.3d 472, 476 (Tex. App.—Corpus Christi 2000, no pet.).

In reviewing factual sufficiency, we consider all of the evidence and will uphold the finding unless the supporting evidence is so weak or the finding so against the overwhelming weight of the evidence as to render the finding manifestly unjust. *Golden Eagle Archery v. Jackson*, 116 S.W.3d 757, 761-62 (Tex. 2003). We review

4

conclusions of law de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

### B. Applicable Law

Under the family code, a trial court shall render a protective order if, after a hearing, it finds that family violence has occurred and is likely to occur in the future. *See* TEX. FAM. CODE ANN. § 81.001 (West 2008), §85.001(b) (West Supp. 2011). "Family violence" is defined as follows:

> an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault but does not include defensive measures to protect oneself.

*Id.* § 71.004(1) (West 2008).

When the record does not contain evidence specifically related to a person's likelihood of future violence, the central focus is whether evidence of past family violence will support a finding that future family violence is likely. *See Teel v. Shifflett*, 309 S.W.3d 597, 604 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("In cases involving protective orders against family violence, evidence that a person has engaged in abusive conduct in the past permits an inference that the person will continue this behavior in the future."). "Oftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order." *Id.* (quoting *In re Epperson*, 213 S.W.3d 541, 544 (Tex. App.—Texarkana 2007, no pet.)).

5

**C.    Finding of Family Violence**

In his first issue, appellant contends that the evidence is legally and factually insufficient to support the trial court's findings that family violence is likely to occur in the future.  *See* TEX. FAM. CODE ANN. §§ 81.001, 85.001(b).  Appellant argues that the evidence is insufficient because, other than the incident in question, "the only evidence, if this Court considers it evidence, which would support a finding that family violence is likely to occur in the future is that [appellant] has a short temper."

We disagree that the evidence is insufficient to support the trial court's finding that family violence is likely to occur in the future.  The trial court, as the finder of fact, weighed the evidence and found that the single incident in which appellant pointed a shotgun at his wife's head and cocked it, as if preparing to shoot her, was a sufficiently severe act of family violence to warrant a finding that, given appellant's "short temper," family violence is likely to occur in the future.  *See Teel*, 309 S.W.3d at 604.  We will not substitute our judgment for that of the trial court merely because we might have reached a different conclusion.  *See Ulmer*, 130 S.W.3d at 301; *B.C. v. Rhodes*, 116 S.W.3d 878, 884 (Tex. App.—Austin 2003, no pet.).

Appellant's first issue is overruled.

**D.    Justification Defense**

In his second issue, appellant contends that the trial court erred in failing to find that justification was a defense to family violence.  Appellant argues that his conduct in pointing a shotgun at his wife's head and cocking the weapon was justified because it was necessary to terminate her trespass into his apartment.  *See* TEX. PENAL CODE ANN. § 9.41(a) (West 2011) ("A person in lawful possession of land or tangible, movable

property is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to prevent or terminate the other's trespass on the land or unlawful interference with the property."). We disagree.

The family code specifically states that "family violence . . . does not include defensive measures to protect oneself." TEX. FAM. CODE ANN. § 71.004(1). The legislature could have, but did not, exclude defensive measures to protect one's property. *See id.* Accordingly, because appellant's theory of justification did not involve "defense measures to protect oneself," it is not a valid defense to a finding of family violence. It is also worth noting that this result is perfectly consistent with Chapter 9 of the penal code, which provides in relevant part, "The fact that conduct is justified under this chapter does not abolish or impair any remedy for the conduct that is available in a civil suit." TEX. PENAL CODE ANN. § 9.06 (West 2011).

Appellant's second issue is overruled.

### E.    Provisions Relating To Children

In his third issue, appellant argues that there is insufficient evidence to support the provisions of the protective order regarding the couple's children. In relevant part, the Amended Final Protective Order gives appellee "exclusive possession of the [couple's] children" and prohibits appellant from communicating in any manner with the children, except through appellant's counsel. In addition, appellant is "[p]rohibited from going to or near, or within 100 yards of, any location where [his children] are known by [appellant] to be."

"The terms of an order that denies possession of a child to a parent or imposes restrictions or limitations on a parent's right to possession of or access to a child may

7

not exceed those that are required to protect the best interest of the child." *See* TEX. FAM. CODE ANN. § 153.193 (West 2008); *id.* § 153.002 (West 2008) ("The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child."). The trial court was empowered, even if it found "a history or pattern" of family violence, to order supervised visitation, among other things, in order to ensure that the best interests of the children are protected while also providing some access for appellant as their parent. *See id.* § 153.004(d) (West 2008); *In re J.R.D.*, 169 S.W.3d 740, 749 (Tex. App.—Austin 2005, pet. denied) ("The legislature has declared a presumption that it is in the child's best interest to have the minimum amount of time with any reasonably safe parent . . . .").

We agree with appellant's assertion that the facts of this case are analogous to those in *In re Lewis*, an unpublished opinion, in which the Eastland Court of Appeals found that there was no evidence that the defendant had made any threats of violence to his mother. *In re Lewis*, No. 11-04-00075-CV, 2005 Tex. App. LEXIS 6308, at *7 (Tex. App.—Eastland Aug. 11, 2005, no pet.) (mem. op.). Here, there is no evidence that appellant committed any family violence against his children or that he is likely to commit family violence against his children in the future. Accordingly, appellant's third issue is sustained.

In *In re Lewis*, the Eastland Court of Appeals modified the protective order to delete all provisions which prohibited appellant from seeing or communicating with his mother and then affirmed the order as modified. *Id.*; *see also* TEX. R. APP. P. 43.2(b).

In this case, we will do likewise by modifying the protective order to delete all provisions prohibiting appellant from seeing or communicating with his children.

### F.       Attorney's Fees

In his fourth issue, appellant contends that there is no evidence to support the trial court's award of attorney's fees.  As noted above, on December 14, 2011, the trial court held a hearing on appellant's motion to modify, correct, or reform judgment, in which he requested that the trial court "delete the assessment of the attorney's fees provision because no evidence in support of attorney's fees was presented in the trial of this matter."  On December 14, 2011, the trial court entered its Amended Final Protective Order, in which it stated that "after examining the record and hearing the evidence and argument of counsel, . . . [appellant's] motion [is] denied as to correction or modification [of the] order as to attorney's fees."

An appellate court reviews a trial court's decision to award or not award attorney's fees under an abuse of discretion standard of review.  *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004).  A trial court abuses its discretion when it acts in an arbitrary and unreasonable manner, or when it acts without reference to any guiding rules or principles.  *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

> In applying the abuse of discretion standard, reviewing courts defer to the trial court's factual determinations; a reviewing court does not engage in its own factual review, but decides whether the record supports the trial court's resolution of factual matters.  If the record supports the trial court's evidentiary findings, the reviewing court is not at liberty to disturb them.  A reviewing court instead determines only whether the trial court properly applied the law to the facts in reaching its legal conclusion.

*State v. $217,500 in U.S. Currency*, 18 S.W.3d 631, 633-34 (Tex. 2000). A trial court does not abuse its discretion when it makes its decision on conflicting evidence and some evidence supports its judgment. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *Garcia-Udall v. Udall*, 141 S.W.3d 323, 333 (Tex. App.–Dallas 2004, no pet.) (citing *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Burns v. Burns*, 116 S.W.3d 916, 921 (Tex. App.–Dallas 2003, no pet.)). In determining whether the trial court abused its discretion, we must examine the entire record. *Mercedes Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996).

The burden of providing a record showing error requiring reversal is on the appellant. *Appleton v. Appleton*, 76 S.W.3d 78, 87 (Tex. App.–Houston [14th Dist.] 2002, no pet.) (citing *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990); *Budd v. Gay*, 846 S.W.2d 521, 523 (Tex. App.–Houston [14th Dist.] 1993, no writ) (holding that, without a sufficient record, the reviewing court cannot determine whether the trial court committed error or whether error was properly preserved)). Here, the record contains the reporter's record from the hearing held on November 7, 2011; however, appellant has not ensured that the appellate record contains a reporter's record of the hearing conducted on December 14, 2011 on appellant's motion to modify, correct, or reform the judgment as to attorney's fees. *See Mercedes Benz Credit Corp.*, 925 S.W.2d at 666; *Appleton*, 76 S.W.3d at 87. Without the reporter's record for this hearing on the issue of attorney's fees, we cannot determine whether the trial court abused its discretion by awarding attorney's fees to appellee. *See Appleton*, 76 S.W.3d at 87; *see also Wilms v. Americas Tire Co., Inc.*, 190 S.W.3d 796, 803 (Tex. App.–Dallas 2006, pet. denied) (explaining that the appellate court must presume that the evidence is

10

sufficient to support trial court's decision when appellant fails to bring forth reporter's record). Accordingly, appellant's fourth issue is overruled.

## III. Conclusion

The judgment of the trial court is affirmed as modified.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
16th day of August, 2012.